# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  4:13CR458 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| ANTHONY CUNNINGHAM, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Anthony Cunningham to suppress the fruits of the August 2, 2013 search of a residence located in Salineville, Ohio. (Doc. No. 17.) The government opposes the motion. (Doc. No. 18.) The Court conducted an evidentiary hearing on the motion on December 16, 2013. At the conclusion of the hearing, the Court took the matter under advisement

## I.      BACKGROUND

On July 31, 2013, Detective Sargent Steven Walker of the Columbiana County Drug Task Force ("CCDTF") applied for a warrant to search a house located at 39363 State Route 39, Salineville, Ohio, 43945. The house was believed to be the residence of Cunningham. In support of his application, D.S. Steven Walker swore out an affidavit that is the focus of the present motion. (Doc. No. 17-1, Affidavit of D.S. Steven Walker.)

According to the affidavit, on July 1, 2013, a confidential informant—designated as "Confidential Informant 13-0"—contacted Detective Michael Harty of the CCDTF and began providing information relative to the underlying investigation. The informant advised officers that they could purchase heroin and crack cocaine at the Salineville residence. On July 30, 2013, the confidential informant, at the direction of the CCDTF, participated in a "controlled buy" of heroin and crack cocaine at the residence. The following day (July 31, 2013), a second controlled buy was conducted at the residence, again using the same confidential informant. Both attempts were successful, as the confidential informant was able to acquire drugs on each occasion. (*Id*. at 54-55.)

The affidavit also detailed the method by which agents monitored the controlled buys. Officers met with the informant at a safe location prior to each sale, at which time the informant was searched to determine that he had no money or drugs on his person. The informant was then supplied with marked bills and instructed to attempt to purchase drugs at the residence. The informant was monitored during the purchases, using both visual and audio recording devices, and was searched immediately after each buy. In both cases, upon return to the safe location, the confidential informant was found to have drugs and no cash on his person. (*Id*. at 54-55.)

Following the second controlled buy, D.S. Scott Walker sought to obtain a warrant to search the residence, and submitted an affidavit to a state court judge in support of his request. The judge issued a search warrant for the residence (Doc. No. 17-2, Search Warrant.) and the search warrant was executed on August 2, 2013. D.S. Steven Walker was part of the team of officers from the CCDTF and the Drug Enforcement Administration ("DEA") that executed the search warrant. He testified that defendant and

2

a second individual were found inside the residence, and both were secured in handcuffs and detained on the front porch, where they remained with officers during the search. Several officers testified that it was standard practice to temporarily remove or secure individuals found at a premises during a search for the safety of the agents and the individuals while the premises is being secured.

DEA Special Agent James DeLuca testified that he advised defendant of his constitutional right not to speak with officers. He stated that he read verbatim from Form DEA-13A (Doc. No. 19, Gov. Ex. 2, DEA-13A Form), which the Court finds properly conveys and explains an individual's privilege against self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution. *See Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The warning given to the defendant was as follows;

Before we ask you any questions, you must understand:

- You have a right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand?

Are you willing to answer some questions?

Special Agent DeLuca testified credibly that the defendant acknowledged that he understood his rights, did not ask for an attorney, and did not say he did not wish to answer questions. Additionally, Special Agent DeLuca and several officers testified that at no time was defendant threatened, abused, or made any promises in connection with

speaking with officers, nor did the defendant appear to be intoxicated or under the influence of any narcotics at the time he was read his rights, or at any time during the search.

Detective Mike Hardy of the CCDTF searched the residence's only bedroom. There, he found a 40 caliber Derringer firearm. Following the discovery of the weapon, Detective Troy Walker, also assigned to the CCDTF, testified that he asked defendant about the weapon, pointing out to defendant that it was his understanding that defendant was under a disability to possess a gun. Defendant acknowledged that he was under such a disability, but explained that he had recently purchased the weapon after he had been robbed.

The search yielded heroin, a scale, U.S. currency, crack cocaine, multiple cell phones, and the aforementioned weapon. At the conclusion of the search, defendant was arrested on a state charge of possessing a weapon while under a disability. On October 16, 2013, defendant was charged on the present indictment with maintaining a residence for the purpose of distributing heroin and cocaine, in violation of 21 U.S.C. §§ 856(a)(1), 856(b). (Doc. No. 1, Indictment.)

## I.  GOVERNING LAW AND DISCUSSION

Defendant Cunningham seeks to suppress all evidence seized during the August 2, 2013 search, owing to what he perceives as insufficiencies in the affidavit offered in support of the search warrant. Specifically, defendant complains that the affidavit failed to establish the reliability of the confidential informant. In particular, defendant underscores the fact that the affidavit failed to state that the confidential informant had provided information that had led to any prior convictions. Defendant also

4

challenges his warrantless arrest, and seeks to suppress statements he made at the time of the search.

### A.    *Probable Cause for the Search*

The Fourth Amendment mandates that there must be probable cause for any search and seizure. U.S. CONST. AMEND. IV. "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Pardo*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Fraizer*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotation and citation omitted). "Probable cause is based on the totality of the circumstances; it is a 'practical, non-technical concept that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *Fraizer,* 423 F.3d at 531). However, the Court's review of the sufficiency of the affidavit is limited to the information presented in the four-corners of the affidavit. *See Whiteley v. Warden*, 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Where an affidavit relies heavily upon information from a confidential source, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*,

434 F.3d 887, 893 (6th Cir. 2006); *Fraizer*, 423 F.3d at 532. "As long as the issuing judge can conclude independently that the information is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005); *see United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) ("an affidavit that supplies little information concerning an informant's reliability may [still] support a finding of probable cause, under the totality of the circumstances, if it includes corroborating information").

In *United States v. Pusey*, 189 F. App'x 475 (6th Cir. 2006), police received a tip from an informant that defendant was selling drugs out of his home. To corroborate the information, the police used the confidential informant to make two controlled buys from the defendant's home. The police searched the confidential informant both before and after the controlled buys so that they could confirm that the drugs on his person after the buys had come from the defendant's residence. The affidavit offered in support of the search warrant detailed the two controlled buys. Notwithstanding the fact that the affiant did not identify the confidential informant to the magistrate who issued the warrant, the court ruled on appeal that the warrant was supported by probable cause. While the court relied, in part, on the fact that the confidential informant had given credible information in the past, the court also ruled that the controlled buys, the police's surveillance of the defendant's residence, and neighbor complaints combined to form probable cause for the warrant. *Id*. at 479-80.

Similarly here, D.S. Steven Walker's affidavit indicated that the confidential informant had advised that drugs could be purchased at the defendant's residence, information that was then borne out when the confidential informant

participated in two controlled buys at defendant's residence immediately prior to (within days of) the issuance of the search warrant. The affidavit also stated that a police investigation had revealed that defendant had been using his residence, or allowing others, to sell drugs. In particular, the affiant noted that several anonymous tips had been received regarding the drug activity at defendant's residence. The affiant further observed that, based upon his experience, drugs and other evidence of drug activity would likely be found at a residence where drug activity was believed to have taken place. Like the affidavit in *Pusey*, the  information provided to the task force officers by the confidential informant regarding the availability of drugs that could be purchased at the residence proved reliable when the two successful controlled drug buys were affected. Additionally, while defendant complains about what the affidavit does not contain, the totality of the circumstances—including the two prior controlled buys, the tips, the officers' observations and interviews, and the officer's experience—support the magistrate's finding of probable cause. *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."), *cert. denied*, 531 U.S. 907, 121 S. Ct. 251, 148 L. Ed. 2d 181 (2000); *cf. Fraizer*, 423 F.3d at 532 (no probable cause where confidential informant's information had *no* corroboration, and informant did not personally witness *any* drug activity).

B.    *The Good Faith Exception*

In the event the Court was to find probable cause lacking, the government argues that the search was still constitutionally permissible under the good faith doctrine articulated in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677

(1984). The exclusionary rule will not apply to bar the admission of evidence seized in violation of the Fourth Amendment where the officers had a "good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922-23 n.23.

The good-faith defense will not apply, however, where: "1) the supporting affidavit contains information the affiant knew or should have known is false; 2) the issuing magistrate lacked neutrality and detachment; 3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable; or 4) the warrant is facially deficient." *United States v. Czuprynski*, 46 F.3d 560, 563-64 (6th Cir. 1995) (citing *Leon*, 468 U.S. at 923), *opinion supplemented by* 56 F.3d 169 (6th Cir. 1995). With respect to the third exception, courts will not find good faith where the affidavit is merely a "bare bones" document. *See Leon*, 468 U.S. at 914-15. A "bare bones" affidavit is one "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. at 923. Such affidavits "state[] suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . ." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

At the suppression hearing, defense counsel argued that the affidavit

8

contained erroneous information because it suggested that the investigation into drug activity at the Salineville, Ohio residence had lasted for "months," rather than one "month," noting that the affidavit make clear that the confidential informant had only been cooperating on the present investigation for approximately thirty days. However, when asked about the reference in the affidavit to a several month long investigation, D.S. Steven Walker explained that very early on when he had started working with the CCDTF in April 2013, and prior to working with confidential informant 13-0, he had received several anonymous tips and had had also interviewed people who had purchased drugs at the Salineville, Ohio residence. On the basis of this credible testimony, the Court finds that the "several month" investigation reference in the affidavit was accurate, and further finds no evidence that D.S. Steven Walker otherwise provided information in the affidavit that he knew was false or that he provided such information with reckless disregard for the truth.

Additionally, the Court finds that the affidavit was not the kind of "bare bones" document that is prohibited by the Fourth Amendment and federal case law. The affidavit contained information from a confidential informant that drugs could be purchased at the Salineville residence. This information was corroborated by two controlled buys, anonymous tips of drug activity at the residence, and officer observations and interviews. Additionally, the affidavit provided that D.S. Steven Walker's years of police experience taught him that drugs, currency, and drug paraphernalia would likely be found at a location were drugs were believed to have been sold. Under these circumstances, a reasonable officer would have been able to rely in good faith that the warrant was supported by probable cause. *See United States v. Schultz*,

9

14 F.3d 1093, 1098 (6th Cir. 1994) (knowledge of wrongdoing and a hunch borne out of experience that evidence would be found in a particular place sufficient to demonstrate good faith reliance); *see, e.g., United States v. Bennett*, 285 F. Supp. 2d 978, 983-84 (E.D. Mich. 2003) (notwithstanding a lack of probable cause to support the warrant, officer had a good faith belief that the warrant was sufficient where officer presented information to the magistrate that defendant had made a false declaration on an application for a firearm, and experience dictated that the weapon would be found at the residence), *rev'd on other grounds*, 112 F. App'x 375 (6th Cir. 2004). While the Court finds that the search warrant was supported by probable cause, the totality of the circumstances would also support a finding that the officers were entitled to rely in good faith on the validity of the search warrant.

C.    *Voluntariness of the Statements*

During the search of defendant's residence, officers discovered, among other things, a firearm. Detective Troy Walker asked defendant if he was under a disability to possess a gun, defendant indicated that he was but that he had acquired a gun because he had recently been robbed. Defendant seeks to exclude this confession. The government concedes that defendant was "in custody" when he was questioned on his front porch about the firearm, but posits that defendant voluntarily waived his right to remain silent.

The evidence offered at the hearing demonstrated that defendant was properly advised of his rights *before* he was asked about the gun. Specifically, Special Agent DeLuca testified that defendant was apprised of his rights, that he understood them, and that he did not state that he was unwilling to speak with police. The Court

10

credits this testimony, as well as the testimony from several other officers that defendant was not threatened, coerced, or promised anything in exchange for speaking with the officers. For this reason, the Court finds that defendant knowingly and voluntarily spoke with officers after being properly advised of his rights, thus waiving his right to remain silent.[1] *See Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2262, 176 L. Ed. 2d 1098 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."); *United States v. Snodgrass*, 635 F.3d 324, 328-29 (7th Cir. 2011) (waiver based on totality of circumstances because defendant not mentally impaired or under the influence of drugs, not harmed mentally or physically); *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (waiver based on totality of circumstances because defendant verbally indicated that he understood his *Miranda* rights, never asked for a lawyer, and continued speaking with officers). These statements will not be suppressed.

###### D.    Probable Cause for the Arrest

Finally, defendant complains that he was arrested without a warrant and without probable cause. While acknowledging that defendant was arrested without a

---

[1] At the suppression hearing, defense counsel made repeated reference to the fact that defendant was not physically presented with the firearm at the time he was questioned about the gun's ownership. While it is true that courts do not consider events occurring outside the presence of the interrogated suspect because they have no bearing on the suspect's capacity to comprehend and knowingly waive *Miranda* rights, defendant was apprised of the discovery of the weapon before he spoke with police. *See Moran v. Burbine*, 475 U.S. 412, 422, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986) ("we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights").

warrant, the government insists that there was probable cause for his arrest because defendant confessed to possessing a gun while under a disability. When an officer has probable cause to believe that an individual has committed a criminal offense, he may arrest the individual without running afoul of the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549 (2001); *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959) ("Probable cause [to arrest] exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."); *see, e.g., United States v. Fleming*, 201 F. Supp. 2d 760, 768 (E.D. Mich. 2002) (warrantless arrest supported by probable cause for operating a vehicle without a license where, during a lawful investigatory stop, defendant admitted to not having a driver's license).[2] Here, the officers had probable cause to arrest defendant after he admitted to owning a weapon while under a disability, and his arrest, therefore, was lawful.

For all of the foregoing reasons, defendant's motion to suppress is denied in its entirety.

**IT IS SO ORDERED**.

Dated: January 10, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[2] Additionally, the Court finds that defendant's attack upon the validity of his arrest is moot. The remedy for a constitutionally deficient arrest is the suppression of all evidence obtained in connection with the arrest. *See Mapp v. Ohio*, 367 U.S. 643, 654, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (If an officer arrests an individual without probable cause, evidence obtained in the course of the unconstitutional arrest is inadmissible.) Because the statements were elicited pursuant to a valid search, and no further statements were elicited after his arrest, defendant would not be entitled to the suppression of any statements or evidence.

12